UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 23-CV-5898 (RER) (LB)

———————————

A<small>NDREW</small> S<small>TEVENS</small>,

P<small>LAINTIFF</small>,

<small>VERSUS</small>

M<small>ATTSON</small> T<small>OMLIN</small>,

D<small>EFENDANT</small>.
———————————

**MEMORANDUM & ORDER**

March 12, 2025
———————————

**RAMÓN E. REYES, JR., United States District Judge:**

Plaintiff Andrew Stevens ("Plaintiff" or "Stevens") claims to have written an original screenplay titled *Way Out West* that was copied by defendant Mattson Tomlin ("Defendant") in the production of the Netflix film *Project Power*. Before the Court is Defendant's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. After carefully reviewing the record, and for the reasons set forth herein, Defendant's motion is GRANTED.[1]

---

[1] The Court acknowledges and offers its deep gratitude to Daniel Ruderman, a judicial intern and third-year law student at St John's University School of Law, for his assistance in researching and drafting this memorandum and order.

**BACKGROUND**

I.      Factual Background

Plaintiff, a writer of screenplays, alleges that he registered an unpublished script titled *Way Out West* in February 2018 with the United States Copyright Office. (ECF No. 7 ("Compl.") ¶¶ 10–11). About three years later, Plaintiff received a Certificate of Registration from the Copyright Office, effective March 16, 2021. (*Id.* at 6). Plaintiff also submitted the *Way Out West* script to the Writers Guild of America ("WGA") and received a Document of Registration with effective date May 31, 2018. (*Id.* at 7).[2] Plaintiff describes the screenplay as "complex," and centered on a character named West, a former assassin for a dangerous crime syndicate pursued by corrupt detectives and hitmen hired by his former boss. (*Id.* at ¶¶ 16–20). West is an "extremely good fighter" who can "use his ninja powers to disappear." (*Id.* at ¶ 19). West is injured and seeks his teacher for a "special ritual" that "spreads a special formulated powder all over West, making his body cold like ice and healing all his wounds," after which "he now possesses five minutes of Angelic Power." (*Id.* at ¶ 20; ECF No. 23 ("Pl. Opp.") ¶ 7).

Plaintiff "believes" Defendant accessed the *Way Out West* script through the WGA registry and subsequently copied significant artistic elements for use in *Project Power*. (Compl. at ¶¶ 15, 21). *Project Power,* released on August 14, 2020, involves a pharmaceutical company that developed a drug in collaboration with the military that grants users five minutes of an unpredictable superpower. (ECF No. 20, Ex. 1).

---

[2] Despite filing two amended complaints, Plaintiff has not supplied a copy of the *Way Out West* screenplay to the Court. Therefore all facts about *Way Out West* are drawn from the pleadings. (*See* Compl.; *see also* ECF No. 23 ("Pl. Opp.")).

2

Plaintiff alleges the following copied elements: (1) a substance causing five minutes of superpowers, which at times "cause[s] the body to freeze," (2) the ability to become invisible, (3) corrupt detectives pursuing the protagonist, (4) the reference to "Superman" due to the main character's "skills," (5) bandages applied to the protagonist's arms after injury in explosions, (6) carrying a cell phone, (7) the protagonist experiencing flashbacks, (8) a chase scene, and (9) large bundles of money. (Compl. ¶ 22; Pl. Opp. ¶ 7).

II.   Procedural History

On July 31, 2023, Plaintiff filed a *pro se* complaint generally alleging copyright infringement and plagiarism (ECF No. 1), as well as a motion for leave to proceed *in forma pauperis*. (ECF No. 2). Stevens filed a first amended complaint on August 15, 2023. (ECF No. 4). On August 24, 2023, the Honorable Judge Pamela K. Chen dismissed Plaintiff's complaint s*ua sponte* for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and allowed Plaintiff 30 days to submit a second amended complaint. (ECF No. 5).[3] Judge Chen found that Plaintiff's first amended complaint failed to allege any specific facts against Defendant or facts to support a copyright infringement claim. (ECF No. 5 at 3).

Plaintiff filed his second amended complaint on November 2, 2023, alleging that Defendant accessed the *Way Out West* script through the WGA registry and copied significant artistic elements in *Project Power*, in violation of the Copyright Act, 17 U.S.C. §§ 201–216. (*See generally* Compl.). In addition to actual damages, Plaintiff seeks an award of any profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), costs

---

[3] This case was later reassigned to the undersigned. (Order dated 12/26/2023).

pursuant to 17 U.S.C. § 505, and such other relief as the Court finds proper. (*Id.* at ¶¶ 26, 28). Plaintiff attached a Certificate of Registration from the United States Copyright Office, effective March 16, 2021 (*Id.* at 6), and a Document of Registration from the WGA, effective May 31, 2018. (*Id.* at 7).

After Defendant accepted service of the second amended complaint (ECF No. 17), he timely moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 19 ("Def. Mot.")). Defendant raises two arguments in support of his motion to dismiss. (ECF No. 21 (Def. Mem.")). First, that Plaintiff failed to plead a plausible theory of access to his copyright protected work. (Def. Mem. at 10–12). Second, that Plaintiff failed to allege facts showing that *Way Out West* is substantially similar to *Project Power* beyond its unprotectable abstract concepts and general character archetypes. (Def. Mem.. at 12–18; ECF No. 20, Ex. 1).

Plaintiff opposes Defendant's motion, arguing based on unspecified, personal experience, that third parties can access works stored in the WGA registry, and that he "firmly believe[s] that Defendant, or people acting on his behalf, were able to access [his] *Way Out West* screenplay through the WGA library." (Pl. Opp. ¶ 4–5). Plaintiff also notes the centrality of the theme of a five-minute superpower to both works and lists several other similarities, including "'Superman' skills," an injured and bandaged arm, a chase scene, and bundles of money. (Pl. Opp. ¶ 6–7). In reply, Defendant argues that Plaintiff's access theory is based on unfounded speculation and Plaintiff failed to allege any similarity of protectable expression. (ECF No. 24 ("Reply")).

4

## **LEGAL STANDARD**

On a motion to dismiss, plaintiffs must offer "enough facts to state a claim to relief that is plausible on its face," such that they "nudge their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007). In making this determination, a court is "require[d] to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678.

Even after *Twombly*, courts remain obligated to construe a *pro se* complaint liberally. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, application of a less stringent standard does not relieve plaintiffs of their duty to meet minimal pleading requirements. *See Castro v. Cusack*, No. 15-CV-6714 (ENV) (LB), 2019 WL 3385218, at *6 (E.D.N.Y. July 26, 2019) (granting a motion to dismiss where a plaintiff failed to allege facts showing access of his work, explaining, "district courts are required to afford *pro se* pleaders solicitude, not the use of a Ouija board.").

## **DISCUSSION**

"To prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 108–09 (2d Cir. 2001). To establish infringement, the copyright owner must demonstrate that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Id.* at 110;

5

see also *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010); *Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). As discussed below, Stevens has failed to adequately allege actual copying of *Way Out West*, or substantial similarity between *Way Out West* and *Project Power*, and therefore the Complaint must be dismissed.

I.      Plaintiff's Copyright is Unchallenged and Assumed to be Valid

Stevens alleges that he registered for a copyright with the United States Copyright Office for the unpublished screenplay *Way Out West* in February 2018. (Compl. ¶11). Although the copyright registration date for *Way Out West* was only effective as of March 16, 2021 (Compl. at 6, Defendant does not dispute the issue of copyright validity, thus the Court assumes the fact of valid registration as pleaded in the Complaint. (*See* Def. Mot.; Reply); *see Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 309 (2019) (finding the date of "when the Register has registered a copyright after examining a properly filed application" to be controlling rather than the filing date).

II.     Plaintiff Failed to Plead a Plausible Theory of Access to Support an Inference of Copying

To satisfy the second element of copyright infringement claim—unauthorized copying—a plaintiff must show both that his work was "actually copied" and that the portion copied amounts to an "improper or unlawful appropriation." *Castle Rock*, 150 F.3d at 137 (citation and internal quotation marks omitted). Because direct evidence of actual copying is rare, a plaintiff may establish copying circumstantially "by demonstrating that the person who composed the defendant's work had access to the copyrighted material." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (quoting *Herzog v. Castle Rock Entm't*,

193 F.3d 1241, 1249 (11th Cir.1999)); *see also Boisson v. Banian*, Ltd., 273 F.3d 262, 267 (2d Cir. 2001) ("Actual copying may be established by direct or indirect evidence.").

Access cannot be based on mere "speculation or conjecture," and means that an alleged infringer had a "reasonable possibility"—not simply a "bare possibility"—of seeing the prior work. *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir.1988); *see also Herzog*, 193 F.3d at 1250. To support a claim of access, a plaintiff must offer "significant, affirmative and probative evidence." *Scott v. Paramount Pictures Corp.*, 449 F. Supp. 518, 520 (D.D.C.1978), *aff'd*, 607 F.2d 494 (D.C. Cir. 1979), *cert. denied*, 449 U.S. 849 (1980); *see also Tisi v. Patrick*, 97 F.Supp.2d 539, 547 (S.D.N.Y. 2000). As with any other facts, the access alleged must be plausible. *See Adams v. Warner Bros. Pictures Network*, No. 05-CV-5211 (SLT) (LB), 2007 WL 1959022, at *4 (E.D.N.Y. June 29, 2007) ("Absent a wide dissemination of the infringed work, access generally needs to be proved by showing a particular chain of events or link by which the alleged infringer might have gained access to the work."), *aff'd*, 289 F. App'x 456 (2d Cir. 2008).

Here, Plaintiff fails to plead a plausible theory of access. *Way Out West* was unpublished and therefore it likely was not widely disseminated, if it was disseminated at all. *See Castro*, 2019 WL 3385218, at *7 (citing *Gal v. Viacom Int'l, Inc.*, 518 F. Supp. 2d 526, 538 (S.D.N.Y. 2007)). Nor does Plaintiff allege that he sent copies of the screenplay to Defendant or anyone that Defendant may have known. (*See generally* Compl.) The only factual allegation is Plaintiff's personal belief that Defendant accessed his screenplay through the WGA registry. (*See* Compl. ¶ 15; Pl. Opp. ¶ 5). Even taken as true, such bare conjecture "in this cold factual world . . . fails to allege or raise a plausible inference that [Defendant] ever had access to Plaintiff's work, which might offer circumstantial evidence

7

of copyright infringement." *See Castro*, 2019 WL 3385218, at *6 (granting motion to dismiss where a plaintiff had sent his manuscript to defendant's agent, but failed to "connect the dots" in claiming others had stolen ideas from the manuscript); *see also Polsby v. St. Martin's Press, Inc.*, No. 97 Civ. 690 (MBM), 1999 WL 225536, at *3 (S.D.N.Y. Apr. 19, 1999) (determining that claims of sharing with some recipients "fail to establish a connection, either direct or indirect, between any of the defendants and plaintiff's writings"), *aff'd*, 8 F. App'x 90 (2d Cir. 2001). The Court takes judicial notice that WGA's website states only listed authors presenting photo-identification may access records, and while some submissions may be reviewed by WGA employees to ensure compliance with policies, no submissions are read for content. *See Frequently Asked Questions*, WGAW Registry, https://www.wgawregistry.org/regfaqs.aspx (last visited Feb. 19, 2025); *see also Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 60, n. 2 (2d Cir. 2020) (noting the court's proper judicial notice of a publication "not necessarily for the truth of the matter asserted, but for the publication of such information").

Plaintiff cannot allege access because he provides no concrete facts beyond his mere belief that Defendant accessed his script through the WGA registry. (*See* Compl. ¶ 15; Pl. Opp. ¶ 5); *see Castro*, 2019 WL 3385218, at *6 (access is not alleged where a plaintiff "simply cannot connect the dots between" where he sent his work and "any of the alleged infringers."). Plaintiff does not allege, for example, that Defendant worked for the WGA, or had any relationship or engagement with it. *Cf. Tillman v. New Line Cinema Corp.*, No. 05-CV-0910, 2008 WL 687222, at *1 (N.D. Ill. Mar. 7, 2008) (considering allegations defendant worked for WGA and copied ideas from plaintiff's registered script, but nonetheless granting summary judgment in favor of defendant because works were

8

not similar), *aff'd*, 295 F. App'x 840 (7th Cir. 2008), *cert. denied*, 556 U.S. 1176 (2009). Thus, the pleadings lack a coherent chain of events establishing a reasonable opportunity for Defendant to access and copy *Way Out West*.

Even where works had been sent directly to third parties, courts have held that "bare corporate receipt" is insufficient to show access. *See Jorgensen*, 351 F.3d 46 at 53 (affirming grant of defendant's summary judgment); *see also Dimmie v. Carey*, 88 F. Supp. 2d 142, 146 (S.D.N.Y. 2000) (granting summary judgment, finding an unsolicited submission of a demo tape to Columbia Records was insufficient to show access where "not a scintilla of evidence" supported a plaintiff's theory). Though plaintiff need not come forward with proof at this stage, Plaintiff has pleaded no facts to support his bare belief that Defendant could access WGA's records to view his work. *See Stora v. Don't Ask Why Outfitters*, No. 15-CV-7106 (RRM) (RML), 2016 WL 10571885, at *5 (E.D.N.Y. Dec. 7, 2016),   (granting a motion to dismiss where plaintiff merely speculated access occurred), *adopted by* 2017 WL 1034637 (Mar. 17, 2017); *Adams*, 2007 WL 1959022, at *4 (same); *Polsby*, 1999 WL 225536, at *3 (same). Plaintiff's claims of access are therefore inherently implausible and speculative.

III.  Plaintiff Failed to Plead Substantial Similarity

A copyright plaintiff must adequately plead that the alleged copy is substantially similar to the protected work. Courts may analyze works relied upon in the complaint to determine substantial similarity without converting a motion to dismiss into a motion for summary judgment. *See Gaito Architecture*, 602 F.3d 57 at 64; *Alexander v. Murdoch*, 502 F. App'x 107, 109 (2d Cir. 2012), *as amended* (Nov. 16, 2012); *Stora,* 2016 WL 10571885, at *3.

9

Copyright "does not protect an idea," but rather "the expression of an idea," *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996), or "the author's original contributions." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1004 (2d Cir. 1995) (citations omitted). Common elements that "necessarily result from the choice of setting or situation" are uncopyrightable expression under the *scènes à faire* doctrine. *Williams*, 84 F.3d at 587; *see also Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 102 (2d Cir. 2014) ("Elements . . . like cowboys, bank robbers, and shootouts in stories of the American West—get no protection."); *accord Abdin*, 971 F.3d at 70. Each of the similarities alleged in the Complaint pertain only to noncopyrightable elements.

Plaintiff first emphasizes "the concept of granting a protagonist five minutes of absolute power" as "the main theme of both screenplays." (Pl. Opp. ¶ 6). However, even if the concept of five minutes of superpowers were considered original, the expression of this idea is dissimilar in both works. *See Kaye v. Cartoon Network Inc.*, 297 F. Supp. 3d 362, 367 (S.D.N.Y. 2017) ("The core similarity between [the two works] is that both employ characters associated with magical gems, but the two works use the concept in different ways."); *see also Blakeman v. The Walt Disney Co.*, 613 F. Supp. 2d 288, 311 (E.D.N.Y. 2009).

The broader theme of superheroes and superpowers are also unprotected ideas belonging to the public domain. *See Warner Bros. v. Am. Broad. Cos., Inc.*, 530 F. Supp. 1187, 1190 (S.D.N.Y. 1982), *aff'd*, 720 F.2d 231. Contrary to Plaintiff's allegation, the superpowers in *Project Power* are not absolute, but limited to the powers of specific animals, such as the electric shock of a pistol shrimp. (ECF No. 20, Ex. 1); *see Abdin*, 971 F.3d at 68 (the use of space and time traveling powers inspired by the "tardigrade . .

10

. a microscopic eight-legged animal," were unprotectable concepts). The only superpower specifically alleged to be the same in both works is invisibility, but such generic superpowers, like the ability to fly, are "not original to" Plaintiff's work. *Warner Bros.*, 530 F. Supp. at 1190. Furthermore, the *Way Out West* protagonist's episode of invisibility is not alleged to have occurred within his five minutes of "Angelic Powers," but is said to be due to his "ninja powers." (Compl. ¶ 19). Plaintiff also alleges that the superpower-granting substance causes the body to freeze in both works. (Compl. ¶ 22). However, only one character in *Project Power* experiences "freezing" when taking the drug. (ECF No. 20, Ex. 1). Beyond temporary "freezing" of the body, "the expression of the concept" of a substance granting five minutes of superpowers "is substantially dissimilar in the works." *See Sinicola v. Warner Bros.*, 948 F. Supp. 1176, 1189 (E.D.N.Y. 1996) (finding dissimilar expression of the idea of a fight scene using a meat cleaver due to numerous differences in setting and purpose of the scenes).

Plaintiff further claims that Defendant used elements of *Way Out West*'s protagonist in its depiction of Art, *Project Power*'s protagonist. (Compl. ¶¶ 21–22). In evaluating misappropriation of characters on a copyright infringement claim, courts assess how distinctive or developed each character is. *See Abdin*, 971 F.3d 57, 72; *accord Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930) ("[T]he less developed the characters, the less they can be copyrighted; that is the penalty an author must bear for marking them too indistinctly."); *see also Conan Properties Int'l LLC v. Sanchez*, No. 17-CV-162 (FB), 2018 WL 4522099, at *10 (E.D.N.Y. June 8, 2018). West is a "paid assassin for a dangerous crime syndicate" (Compl. ¶ 17), whereas Art is an ex-soldier and father. (ECF No. 20, Ex. 1). Despite the detailed description of West in the

11

Complaint, the only alleged similarity between the two characters is that they both possess "ninja powers," which is a term not used in *Project Power*, but appears from the Complaint to mean being "an extremely skilled fighter." (ECF No. 20, Ex. 1; Compl. ¶ 19). Having fighting skills in an action film is an indistinct, vaguely delineated character attribute that plainly falls in the category of a stock character trait. *See Blakeman*, 613 F. Supp. 2d at 308–09 (a "Reagan Republican-type," and "a liberal democrat challenger . . . are hardly protected expressions of an idea, but rather stock characters, and thus, not protected elements of a copyrighted work as *scènes à faire*.") (cleaned up); *see also Sinicola*, 948 F. Supp. at 1186 (finding "no significant similarity between the [challenged work]'s contemporary-day, middle-aged police detective Gino, and the [initial work]'s older, traditional, family-oriented Uncle Gino, despite their common Italian-American heritage and great physical strength.") Other courts have found that characters having identical first and last names is insufficient to establish substantial similarity. *See Hogan v. DC Comics*, 48 F. Supp. 2d 298, 311 (S.D.N.Y. 1999) (granting summary judgment where half-vampire, half-human characters with the same name did not tip the scales because their characteristics were non-protectable ideas belonging to the public domain). Having fighting skills is an attribute of most every action film protagonist and since the totality of both characters' other attributes are dissimilar, there is no plausible showing of character misappropriation. *Abdin*, 971 F.3d at 72 ("the suggestion that a copyright infringement claim can be based on such generic and common characteristics is 'highly illogical.'") (quoting Spock, *Star Trek: The Omega Glory*, Star Trek: The Original Series (1968)).

All the remaining purported similarities detailed in Plaintiff's pleadings fall under the *scènes à faire* doctrine as unprotected stock elements common to most action and superhero films. (Compl. ¶ 22; Pl. Opp. ¶ 7). Copyright protection does not extend to "stock themes commonly linked to a particular genre. Foot chases and the morale problems of policemen . . . are venerable and often-recurring themes of police fiction." *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986) (cleaned up). Corrupt police officers in an action film, like "serial killer villains who are portrayed as loners" in superhero films, are a "standard, if not hackneyed, cinematic and literary trope[s] that cannot support a claim of substantial similarity." *Wozniak v. Warner Bros. Ent. Inc.*, 726 F. Supp. 3d 213, 241 (S.D.N.Y. 2024); *see also Sinicola*, 948 F. Supp. at 1190 (finding corrupt police to be unprotectable *scènes à faire*).

Themes as distinctive as "placing dinosaurs on a prehistoric island far from the mainland" have been found to be "no more than a *scènes à faire* in a dinosaur adventure story." *Williams*, 84 F.3d at 589. Plaintiff cannot have the sole right to include bandaged arm injuries following explosions, flashbacks, large bundles of money, chase scenes, or superhuman abilities, lest he is writing the one and only action flick hitting theaters this summer. (Pl. Opp. ¶¶ 6–7); *see Abdin*, 971 F.3d at 70 (describing "space travel" as one of many elements that "are as a practical matter indispensable, or at least standard," in the science fiction genre) (citation omitted); *see also Dean v. Cameron*, 53 F. Supp. 3d 641, 648 (S.D.N.Y. 2014). None of the similarities listed in the pleadings hint at originality transcending the commonplace tropes that a reasonable observer would expect of action and superhero films. *See Sinicola*, 948 F. Supp. at 1190 (finding that "corrupt cops, police shakedowns, renegade mobsters . . . pointed-object-to-the-head homicides, races to

13

capture killers . . . drug trafficking, [etc.] . . . . have appeared repeatedly in fictional police-gangster stories . . . . and are too general or trivial or are stereotyped expression amounting to unprotectible *scènes à faire*.").

Plaintiff does not allege nearly enough similarities considering the lack of facts supporting access. Although access and similarity are usually both required to plead copying, copying may be stated in some instances without facts alleging access if "the two works are so strikingly similar as to preclude the possibility of independent creation." *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995). "Striking similarity exists when two works are so nearly alike that the only reasonable explanation for such a great degree of similarity is that the later . . . was copied from the first.'" *Am. Direct Mktg., Inc. v. Azad Int'l, Inc.*, 783 F. Supp. 84, 95 (E.D.N.Y. 1992). The "striking similarity" test is "stringent . . . . requir[ing], not surprisingly, more than a showing of "substantial similarity." *Gal*, 518 F. Supp. 2d at 537–38. Plaintiff's Complaint does not meet the striking similarity test for the same reasons he fails to allege a substantial similarity between *Way Out West* and *Project Power*, as explained above.

\*   \*   \*

In sum, Plaintiff fails to state a claim because he has not alleged Defendant accessed his work or that Defendant copied it to produce *Project Power*.

## **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss the Second Amended Complaint is GRANTED and the action is dismissed with prejudice. As Plaintiff has already been given leave to amend twice and his claims remain speculative, an amendment cannot reasonably be expected to cure the defects that warrant dismissal.

*See Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (affirming denial of leave to amend a third time as futile when plaintiff offered no plausible support for his allegations); *cf. Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (vacating denial of leave to amend a *pro se* complaint at least once (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010))). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal would not be taken in good faith, and therefore, *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S.438, 444–45 (1962). The Clerk of the Court is respectfully directed to close the case, mail a copy of this Memorandum and Order to Plaintiff, and note the mailing on the docket.

SO ORDERED.

Hon. Ramón E. Reyes, Jr.   Digitally signed by Hon. Ramón E. Reyes, Jr.
Date: 2025.03.12 10:30:58 -04'00'

_____

RAMÓN E. REYES, JR.
United States District Judge

Dated: March 12, 2025
      Brooklyn, NY

15